## A95A2617. CARPET TRANSPORT, INC. v. KENNETH POLEY INTERIORS, INC.
### (466 SE2d 70)

BEASLEY, Chief Judge.

Kenneth Poley Interiors, Inc. is an interior design firm located in Florida and owned by Kenneth Poley. Carpet Transport, Inc. (CTI) is a motor common carrier. Poley Interiors employed CTI to transport three oriental rugs to Westley Interior Installations. Westley, located in Georgia, installs products sold by Poley Interiors and others. Westley, which was considering use of the rugs in one of its projects, determined that it could not use the rugs and returned them to Poley via CTI. On the return shipment, CTI delivered the rugs to Poley in such a wet condition that they were destroyed.

Poley sued CTI for negligence and breach of contract. It sought to recover $12,650 as to the total value of the rugs, prejudgment interest, attorney fees, and litigation expenses. The jury awarded $12,650 in damages, $3,394.42 in prejudgment interest, and $6,491.45 in costs of litigation. CTI appeals the judgment on the verdict and the order denying its motion for new trial.

Prior to shipping the rugs to Westley, Poley informed CTI that the rugs were being offered for sale for $12,650 and were to be insured for $15,000. The bill of lading for the return shipment from Westley to Poley stated that "[t]he agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $15,000" and it described the property as "in apparent good order, except as noted (contents and condition of contents of packages unknown)." The CTI driver signed the bill of lading without exception or notation of damages.

By a telephone call from the driver while en route to Florida, Poley was put on notice that a problem had arisen. When the driver delivered the rugs to Poley, the plastic wrapper in which they had been shipped was wet and full of mud. The rugs, which had weighed 128 pounds when the CTI driver accepted them from Westley, were three times heavier when he delivered the rugs to Poley. The driver insisted that Kenneth Poley personally accept delivery.

A Westley project manager testified that these rugs were stored in Westley's warehouse, that no items stored there had sustained any water damage during the time in question, and that a Westley employee would have undertaken a visual inspection of the packaging when the rugs were shipped back to Poley to determine if there was any damage. A Westley warehouse manager at the time in question gave like testimony. He also testified that when the rugs were returned to Poley, he loaded them onto the CTI truck by hand and would have known if they were wet and heavy.

When Kenneth Poley accepted delivery, he noted on the invoice

that the rugs were wet and that the extent of damage was not known. He put the rugs in the sun to dry, contacted a CTI terminal manager, and told him that the rugs were wet and coming apart. The manager came to inspect the rugs, acknowledged that they were "a real mess," and told Poley not to do anything with them until CTI advised him what to do. Poley followed these instructions strictly, because his experience had been that a violation of such instructions would compromise the claim. After determining that the rugs had been insured, the president of CTI told Poley the claim would be handled. A CTI claims agent later sent Poley a claim form and indicated to him that the claim would be settled within 30 days after he completed the form. Poley later got a letter stating that the claim had been denied. He testified that the claims agent's explanation was that " '[w]e just flat denied it, and you'll have to sue us. And we know that will take you four to five years to take us to court.' "

1. CTI contends that the court erred in failing to direct a verdict in its favor in that Poley failed to establish the first element of a prima facie case, i.e., that the rugs were delivered by Westley to CTI in good condition.

"A shipper establishes a prima facie case of the carrier's negligence and liability under the Carmack Amendment [to the Interstate Commerce Act, 49 USC § 11707] by evincing proof by a preponderance of the evidence that the goods '1) were delivered to the carrier in good condition, 2) arrived in damaged condition, and 3) resulted in the specified amount of damage.' [Cit.]" *Fine Foliage of Fla. v. Bowman Transp.*, 901 F2d 1034, 1037 (1) (11th Cir. 1990).

CTI's contention is rejected for two reasons:

(a) " 'In the present case, the [rugs] arrived in [a plastic wrapper]. [It] had visible damage [i.e., was wet and muddy]. Obviously, if these conditions had existed at the point of shipment, they . . . would have been noted and exceptions made." *W. J. Rabon v. Red Ball Motor Freight,* 292 S2d 332, 335 (La. App. 1974). Hence, the clean bill of lading was sufficient to prove prima facie that no such conditions existed when CTI received the shipment and to place upon CTI the burden of going forward with evidence to exonerate itself.

(b) Cases such as *Fine Foliage,* supra, and *Fuente Cigar, Ltd. v. Roadway Express,* 961 F2d 1558 (11th Cir. 1992), relied upon by CTI, are distinguishable. Unlike the present case, they involved the delivery of goods under seal, packaged in such a way as to prevent discovery by the carrier of the damage later claimed by the shipper. Under those circumstances, a clean bill of lading does not establish a prima facie case. "Instead, the shipper must 'present( ) additional evidence sufficient to establish by preponderance of all the evidence the condition of the goods upon delivery.' [Cit.]" *Fine Foliage,* supra at 1038 (3). Such condition can be established by substantial and reliable cir-

cumstantial evidence alone. *Fuente Cigar*, supra at 1561 (3).

Poley submitted substantial and reliable circumstantial evidence of the good condition of the rugs upon delivery by Westley to CTI, in addition to the clean bill of lading. There was ample evidence to avoid the grant of CTI's motion for directed verdict.

2. CTI contends that the court erred in submitting the issue of attorney fees to the jury.

CTI excepted to the court's jury charge on attorney fees on the ground that the facts did not authorize the charge. In its motion for new trial and on appeal, CTI argues that the evidence was not sufficient either to authorize an award of attorney fees or to establish the reasonableness of the fees awarded.

(a) At trial, Poley submitted invoices from its attorney which represented the costs of litigation. These invoices described the legal services rendered by counsel, set forth the time spent on each task, stated the amount charged, and contained an itemized list of expenses incurred. They totalled the amount which the jury awarded.

" 'An attorney cannot recover for professional services without proof of their value.' [Cit.] Generally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case. [Cits.]" *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 817 (4) (285 SE2d 203) (1981). However, it has never been held that such opinion testimony is an invariable requirement. In *Hughes v. Great Southern Midway*, 265 Ga. 94, 95-96 (1) (454 SE2d 130) (1995), the Court reversed an award of attorney fees because "there was no evidence of the number of hours spent on the case or the hourly fee charged, no testimony from other attorneys *or other evidence* 'to show what constitutes a reasonable attorney fee in light of the litigation history of the case,' [cit.]. . . ." (Emphasis supplied.)

Poley's itemized invoices chronicled the litigation history and described in detail the basis for the charges. Since this evidence was not objected to or controverted by CTI, it authorized the jury to find that the fee charged was reasonable in this case.

(b) "Under OCGA § 13-6-11 expenses of litigation may be awarded if the plaintiff shows that the defendant acted in bad faith, or was stubbornly litigious, or put the plaintiff to unnecessary trouble or expense. 'The plaintiff need not show that all three provisions of the statute are present, but only that one of the three conditions exists. (Cits.) . . .' [Cit.]" *Parking Co. of America v. Sucan*, 195 Ga. App. 616, 618 (3) (394 SE2d 411) (1990). In *Sucan*, we sustained an award of attorney fees where a defendant with a "so-sue-me" attitude refused to pay a claim without any valid reason. There is evidence of the same here.

3. CTI contends that there is not sufficient evidence in the record to establish the value of the rugs.

The rugs were never viewed by an appraiser because someone stole them from Poley while they were lying outdoors, but Poley introduced photographs of two of the rugs before they had been damaged. A professional rug cleaner who had been used by Poley verified that the rugs in the photographs were Poley's rugs and that they were handmade, authentic, oriental rugs. A professional appraiser who viewed the photographs testified likewise and valued one of the rugs at between $14,000 and $18,000 and the other rug at between $9,000 and $12,000.

CTI argues that the appraiser did not have an opportunity to form a correct opinion as to the value of the rugs because he never personally examined them to determine if they were genuine. The appraiser's testimony, that he could tell from the photographs the rugs were genuine, was sufficient. Moreover, there was other evidence the rugs were genuine, and an expert may give an opinion based upon any state of facts supported by the evidence. *In the Interest of A. S. M.*, 214 Ga. App. 668, 671 (1) (448 SE2d 703) (1994).

4. CTI contends that, as a matter of law, prejudgment interest is not available in this case, and that it was error to allow the jury to assess it.

"Allowance of interest in actions for unliquidated damages arising from breach of contract is governed by [OCGA § 13-6-13] which states: 'In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time (until) the recovery.' [Cit.]" *Norair Engineering Corp. v. Saint Joseph's Hosp.*, 147 Ga. App. 595, 604 (6) (249 SE2d 642) (1978). " '[T]he jury in their discretion may increase the immediate amount of damages found, by an allowance of interest.' [Cits.]" *Bennett v. Tucker & Pennington*, 32 Ga. App. 288, 293 (123 SE 165) (1924).

Poley sought $12,650 as the value of the rugs. From the evidence, the jury found that this was the immediate amount of Poley's monetary damages at the time of, and as a result of, CTI's breach. Compare *Malta Constr. Co. v. Henningson, Durham & Richardson, Inc.*, 716 FSupp. 1466 (N.D. Ga. 1989), aff'd 927 F2d 614 (11th Cir. 1991). The jury was thus authorized to allow interest in addition.

5. CTI contends that it was entitled to judgment, as a matter of law, on the issue of Poley's failure to mitigate damages by having the rugs dried and cleaned by an expert in rug cleaning. Poley testified that he attempted to dry the rugs and that he did not have them cleaned because the instructions given to him by CTI precluded him from doing so. This enumeration is utterly devoid of merit.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 19, 1995.

*Patton & Price, C. Ronald Patton*, for appellant.
*Raiford, Dixon & Thackston, Sheldon K. Fram*, for appellee.