## A99A2276. WYNN v. ARIAS.
## A99A2414. ARIAS PROPERTIES, INC. v. WYNN.
### (531 SE2d 126)

RUFFIN, Judge.

Arias Properties, Inc. (API) contracted to build a house for Ethel Wynn. API purchased the lot from the subdivision developer and began construction of the house, but the parties never consummated the transaction due to alleged construction defects. API subsequently sold the house to a third party. Wynn then sued API and its president, Fernando Arias, asserting both contract and tort claims. The trial court granted Arias' motion for summary judgment but denied API's motion for summary judgment. In Case No. A99A2414, API appeals the denial of its motion for summary judgment. In Case No. A99A2276, Wynn appeals the grant of summary judgment to Arias. For reasons discussed below, we affirm the grant of summary judgment to Arias and affirm in part and reverse in part the denial of summary judgment to API.[1]

For purposes of these appeals, the relevant facts are as follows. On or about February 18, 1993, Wynn and API executed a construction agreement, pursuant to which API agreed to build a house for Wynn on a lot in Atlanta. The house was to be built in accordance with plans and specifications that had been purchased by Wynn and provided to API. The contract called for the house to be completed by the closing date of August 18, 1993. Wynn paid API $20,000 in earnest money, which API was required to return if the sale was not consummated for certain reasons. However, the agreement provided that API could retain the earnest money as liquidated damages if Wynn failed to consummate the transaction despite API's performance of its covenants under the agreement. Wynn agreed that API could use the earnest money in the construction of the house and that it was not required to keep the money in a separate account.

For a number of reasons, construction was not completed by the August 18, 1993 closing date. Also, certain changes were required in

---

[1] API's motion seeking sanctions against Wynn for filing a brief with improper margins is denied.

framing and supporting the roof because of what Arias referred to as a defect in the plans provided to him by Wynn. At some point, Wynn noticed that a bow had developed in the rear wall of the house. Arias told Wynn's daughter, Theresa Roseborough, that the roof was "possibly too heavy for the walls." Wynn requested that Arias rebuild the wall to correct the bow, but Arias refused, stating that it was not a structural problem and could be corrected cosmetically. However, Arias said that if Wynn was not satisfied with the house, he would return her earnest money and sell the house to somebody else. Through her daughter, Wynn informed Arias in October that she did not want the house. Arias subsequently prepared a release agreement, pursuant to which Wynn would release any claims against API in exchange for the return of her earnest money. Wynn refused to sign the release, however, and on February 12, 1994, had her daughter send Arias a letter stating that she reserved the right to seek additional damages for breach of contract in addition to the return of the earnest money. The letter stated that, if Arias paid her $21,570, Wynn would waive any claim for interest on the earnest money. Arias did not return Wynn's earnest money or pay the other amounts sought in the letter.

After Wynn informed him that she did not want the house, Arias arranged to convert it to a "spec" house, making certain changes to make it more appealing to a broader range of purchasers. API subsequently contracted to sell the house to a third party, with closing scheduled for April 24 or 25, 1994. On April 21, 1994, Wynn's daughter faxed a letter to Arias' attorney, stating that Arias and API had breached the contract by failing to build the house in accordance with the contract and that any sale to a third party would be an additional breach of the contract. The letter stated that Wynn "has tendered and does tender performance of all of her obligations under the contract immediately upon the fulfillment of all conditions precedent to her obligations." Arias testified that he was not aware of the letter, and the sale was consummated on April 24 or 25.

### Case No. A99A2414

Wynn's complaint against API consisted of five separate counts: breach of contract (Count 1); money had and received (Count 2); negligent supervision (Count 3); tortious breach of the covenant of good faith and fair dealing (Count 4); and a claim for attorney fees and litigation expenses pursuant to OCGA § 13-6-11 (Count 6).[2] In her gen-

---

[2] Count 6 was misnumbered, as there was no Count 5. Also, although Count 6 is entitled "Attorney's Fees and Expenses and Punitive Damages," the body of the count does not assert a claim for punitive damages.

eral prayer for relief, Wynn also sought punitive damages. In its summary judgment motion, API sought a judgment on the whole case or, in the alternative, a partial summary judgment on each separate count. API did not request that, if summary judgment were denied as to a particular count, the court enter an order pursuant to OCGA § 9-11-56 (d), "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy." On appeal, API argues that it was entitled to summary judgment as to each separate count but does not assert that the trial court erred in failing to enter an order pursuant to OCGA § 9-11-56 (d). With this in mind, we shall address each count of the complaint in turn.[3]

1. *Count 1 — Breach of Contract.* In her breach of contract claim, Wynn asserted that API breached the construction contract in a number of ways, including by "failing to build the home in accordance with the plans and specifications attached to the Contract."[4] In its summary judgment motion, however, API wholly failed to address the issue of whether it breached the contract by failing to build the home in accordance with the plans and specifications, and simply addressed the various other allegations supporting the claim for breach of contract. As we held in *Hodge v. SADA Enterprises,*[5]

until [the defendant] pierce[s] the allegations of [the plaintiff's] complaint on a particular issue, [the plaintiff is]

---

[3] Before addressing the merits of the parties' appeals, we feel compelled to mention an issue not fully discussed by the parties, but which renders appellate review of this case difficult. In its appellate brief, API states that "the parties agreed to settle this dispute by API refunding the construction deposit to Mrs. Wynn and the parties rescinding the contract which [is] the basis of this suit." In her brief, Wynn states that she "decided to accept Arias' offer to rescind the Contract and return her $20,000 earnest money" and that she communicated this acceptance to Arias. However, Wynn apparently takes the position that no rescission was effected because API failed to return the earnest money. If, in fact, the parties agreed to rescind the construction contract in return for API's promise to return the earnest money, Wynn would be precluded from asserting a breach of the construction contract and would be limited to suing for breach of the subsequent promise to return the earnest money. See generally *Ardex, Ltd. v. Brighton Homes,* 206 Ga. App. 606, 609 (5) (426 SE2d 200) (1992) (rescission is remedy in which neither party is held liable in damages for breach of contract, and contract is treated as no longer binding). However, Wynn's breach of contract claim alleges only that API breached the original construction contract and is not in any way based upon API's breach of its subsequent promise to return the earnest money. Moreover, API did not contend below, and does not contend on appeal, that Wynn is barred from suing for breach of the construction contract due to the rescission — it simply argues that it did not in fact breach the contract. Because API did not seek summary judgment based on the purported rescission, we cannot consider whether it was entitled to summary judgment on that ground. Because Wynn did not sue for breach of the subsequent promise to return the earnest money, we cannot consider whether API is liable on such promise.

[4] She also alleged that API breached the contract by failing to complete construction by the originally scheduled closing date, failing to build the house without substantial defects, and failing to return her earnest money.

[5] 217 Ga. App. 688 (458 SE2d 876) (1995).

neither required to respond to the motion on that issue nor required to produce evidence in support of his complaint on that issue. The issues that must be rebutted on motion for summary judgment are those raised by the motion. Consequently, [a plaintiff is] not required to present proof on all matters raised in his complaint until [the defendant] pierce[s] his complaint on those issues.[6]

Because API did not pierce the allegations of Wynn's complaint that it breached the contract by failing to build the home in accordance with the plans and specifications, Wynn was not required to come forth with evidence supporting such allegations. Accordingly, the trial court did not err in denying API's motion for summary judgment on Count 1 of the complaint. Although API asserts that it did not breach the contract in several of the other ways alleged by Wynn, it did not seek an order specifying which facts were and were not in controversy but simply moved for summary judgment as to the entire count. Nor does API argue on appeal that the trial court erred in failing to enter such an order but merely argues that it was entitled to summary judgment on the entire count. Thus, we need not consider whether there was evidence to support the various other allegations of breach set forth in Count 1.[7]

2. *Count 2 — Money Had and Received.* In her claim for money had and received, Wynn asserts that API is obligated to return her earnest money. However, such a claim exists only where there is no actual legal contract governing the issue.[8] Since the construction contract specified the circumstances under which API was required to return the earnest money, API was entitled to summary judgment on this claim.[9]

---

[6] (Citations omitted.) Id. at 690 (1). We also note that the summary judgment motion did not raise the issue of whether any breach of the contract was the proximate cause of any damage to Wynn. Therefore, we do not consider this issue on appeal.

[7] See *Pritchett v. Rainey*, 131 Ga. App. 521-522 (206 SE2d 726) (1974); *Butts v. Ga. Cas. &c. Co.*, 179 Ga. App. 819, 821 (348 SE2d 94) (1986); *Borden, Inc. v. Barker*, 124 Ga. App. 291, 295 (183 SE2d 597) (1971); *Ireland v. Matthews*, 120 Ga. App. 510, 512 (171 SE2d 387) (1969).

[8] *Baghdady v. Central Life Ins. Co.*, 224 Ga. App. 170, 171 (2) (480 SE2d 221) (1996).

[9] See id.; *Pickelsimer v. Traditional Builders*, 183 Ga. App. 709, 710 (1) (359 SE2d 719) (1987). We note that, where a buyer has rescinded a construction contract due to the seller's breach, the buyer may bring an action for money had and received to recover any amounts paid to the seller. See *Sulejman v. Marinello*, 217 Ga. App. 319, 320-321 (457 SE2d 251) (1995); *Goldberg v. Black*, 156 Ga. App. 872, 873 (275 SE2d 810) (1981). As discussed above, however, Wynn's complaint is not based on a claim that the construction contract was rescinded; to the contrary, Wynn contends that API is required by the terms of such contract to return the earnest money. In any event, if the construction contract was rescinded in exchange for API's express promise to return the earnest money, then Wynn's claim would be based on that subsequent promise, and not on the theory of money had and received.

3. *Counts 3 and 4 — Tort Claims.* With respect to her claim for negligent supervision of construction, Wynn has not shown that she has any tort claim relating to the construction of the house, since she never in fact acquired any interest in the property. Although API may have breached its contract by failing to build the house properly, Wynn has not shown how this amounts to a tort. In numerous cases, we have recognized that the owner or purchaser of a home may bring a claim for negligent construction against the builder.[10] Wynn does not, however, point to any cases where such a claim has been allowed when the plaintiff never actually purchased the property she claims was negligently built. In such case, the true basis for the builder's liability, if any, is that it failed to perform the terms of its construction contract. It is well settled that mere failure to perform a contract does not constitute a tort.[11] Therefore, API was entitled to summary judgment on Wynn's claim for negligent supervision.

Similarly, API was entitled to summary judgment on Wynn's claim for tortious breach of the covenant of good faith and fair dealing.[12] Although a duty of good faith and fair dealing is implied in every contract, this duty is contractual in nature and does not give rise to tort liability.[13] A plaintiff has a tort claim only where, "in addition to breaching a duty imposed by contract, [the defendant] also breaches a duty imposed by law."[14] To the extent that API violated a duty of good faith and fair dealing, such duty was imposed solely by the construction contract, and not by any other provision of law. Accordingly, API was entitled to summary judgment on this tort claim.

4. *Count 6 — OCGA § 13-6-11.* With respect to her claim for attorney fees and expenses of litigation under OCGA § 13-6-11, Wynn contends that API has been stubbornly litigious and caused her unnecessary trouble and expense in defending against her "claim for the return of her earnest money and other damages associated with [API's] breach of the Contract." However, when

> the only asserted basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary

---

[10] See *Howard v. McFarland*, 237 Ga. App. 483, 486-489 (3) (515 SE2d 629) (1999); *Crosby v. DeMeyer*, 229 Ga. App. 672 (494 SE2d 568) (1997); *Bilt Rite of Augusta v. Gardner*, 221 Ga. App. 817 (472 SE2d 709) (1996); *Seely v. Loyd H. Johnson Constr. Co.*, 220 Ga. App. 719, 720-722 (1) (470 SE2d 283) (1996).

[11] See *Brown v. Hilton Hotels Corp.*, 133 Ga. App. 286, 289 (1) (211 SE2d 125) (1974).

[12] Wynn does not address this issue in her appellate brief.

[13] See *Constr. Lender v. Sutter*, 228 Ga. App. 405, 409-410 (2) (491 SE2d 853) (1997).

[14] (Punctuation omitted.) *Spears v. Mack & Bernstein, P.C.*, 227 Ga. App. 743, 745 (2) (490 SE2d 463) (1997). See also *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 87 (4) (460 SE2d 545) (1995).

trouble and expense, there is not any evidence to support an award pursuant to the statute if a bona fide controversy clearly exists between the parties.[15]

Several cases suggest that an award under OCGA § 13-6-11 is unauthorized if there is a bona fide controversy as to *any* claim asserted by a plaintiff in the litigation. For example, we held in *Ralston v. Etowah Bank*[16] that the existence of a controversy regarding the issue of punitive damages precluded an award of attorney fees, notwithstanding the fact that summary judgment had been granted against the defendant on the plaintiff's claim for negligence. In *Modern Woodmen of America v. Crumpton*,[17] we held that there was no basis for finding that the defendant was stubbornly litigious with respect to the plaintiff's breach of contract claim, since there was a bona fide controversy regarding the plaintiff's tort and punitive damage claims. As discussed above, with respect to certain of Wynn's claims, not only was there a bona fide controversy, but API was actually entitled to summary judgment on such claims. Thus, regardless of whether there is any bona fide controversy as to the breach of contract claim, it is at least arguable that an award under OCGA § 13-6-11 would be precluded.

In any event, even if we consider simply the claim for breach of contract, there is a genuine dispute as to whether Wynn breached the contract by refusing to purchase the property or whether API breached the contract by failing to construct the house properly. Wynn's refusal to purchase the property was apparently based on API's unwillingness to rebuild the rear wall in order to correct a small bow, which Arias testified was not a structural problem and could be remedied cosmetically. The construction agreement provided that API could retain the earnest money as liquidated damages if Wynn failed to consummate the transaction despite API's performing all of its obligations under the agreement. Such liquidated damages provisions have been held to be enforceable by the seller where the buyer refuses to perform under a construction contract.[18] Because there is a genuine dispute as to which party is responsible for breaching the construction contract, there is a genuine dispute over API's duty to return the earnest money. Accordingly, API was entitled to

---

[15] (Punctuation omitted.) *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746, 747 (1) (365 SE2d 540) (1988). See also *Milam v. Attaway*, 195 Ga. App. 496, 498-499 (2) (393 SE2d 753) (1990).

[16] 207 Ga. App. 775, 778 (4) (429 SE2d 102) (1993).

[17] 226 Ga. App. 567, 570 (487 SE2d 47) (1997).

[18] See *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808-809 (375 SE2d 222) (1989) (upholding liquidated damages provision equal to about ten percent of purchase price).

summary judgment on Wynn's claim for attorney fees and expenses under OCGA § 13-6-11.

It appears that Wynn's claim for punitive damages is based solely on her contention that API has been stubbornly litigious and put her to unnecessary trouble and expense. Because API is entitled to summary judgment on that issue, as well as on Wynn's tort claims, the only remaining claim is for breach of contract. It is well settled that punitive damages are not available on breach of contract claims.[19] Therefore, API was entitled to summary judgment on the issue of punitive damages.

### Case No. A99A2276

5. In her first enumeration, Wynn contends that the trial court erred in considering Arias' summary judgment motion without first ruling on her motion to compel production of certain documents. However,

> [t]he record before us does not indicate that [Wynn] moved to continue the hearing on the motion for summary judgment pending a ruling on [her] motion to compel or that [she] otherwise objected to the court's failure to rule on the motion to compel prior to ruling on the motion for summary judgment. [Indeed, Wynn requested that the summary judgment motion be ruled on and denied.] Consequently, [Wynn] has waived the right to assert the court's failure to rule on the motion to compel as error on appeal.[20]

6. In her second enumeration, Wynn asserts two separate arguments. First, she argues that Arias is personally liable for breach of contract because API is merely his alter ego. Second, she argues that Arias is liable in tort because he personally supervised the negligent construction by API.

(a) With respect to the first issue, Wynn asserts that there was sufficient evidence to pierce the corporate veil and impose liability on Arias. We have previously held that

> [t]he concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contrac-

---

[19] See *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126 (1) (b) (390 SE2d 589) (1990); *McDuffie v. Argroves*, 230 Ga. App. 723, 726 (3) (497 SE2d 5) (1998).

[20] (Punctuation omitted.) *Rush v. Food Giant*, 183 Ga. App. 388, 392 (2) (358 SE2d 919) (1987).

tual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.[21]

Where a "piercing the corporate veil" theory is advanced, a defendant is entitled to summary judgment "if no evidence exists that shows, or from which it might be inferred, that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud, or to evade statutory, contractual or tort responsibility."[22]

The only evidence Wynn points to in this regard is (1) that API is controlled by Arias, with its office and telephone at his home, and (2) that Arias testified that API did not have funds on hand to repay Wynn's earnest money. Clearly, the mere fact that a corporation is controlled by a single individual does not create a jury issue as to abuse of the corporate form.[23] Likewise, the fact that a corporation has minimal cash on hand at a given point in time does not, standing alone, create a jury question on this issue. As the Supreme Court has stated, "for undercapitalization of a corporation to justify piercing the corporate veil, it must be coupled with evidence of an intent at the time of the capitalization to improperly avoid future debts of the corporation."[24] There is no such evidence in this case, nor is there evidence that Arias used the earnest money for any improper purpose, in order to avoid paying debts of the corporation. Indeed, Wynn admits that she agreed the earnest money was to be used in construction of the house and need not be maintained in a separate account.

Wynn argues that defendants did not produce certain corporate documents requested in discovery, which she believes might have strengthened her case for piercing the corporate veil. However, defendants objected to production of those documents, and Wynn did not obtain an order requiring production of the documents prior to

---

[21] (Punctuation omitted.) *Clark v. Cauthen*, 239 Ga. App. 226, 227 (2) (520 SE2d 477) (1999).

[22] (Punctuation omitted.) Id. at 228.

[23] See id. at 227.

[24] *Hickman v. Hizer*, 261 Ga. 38, 39-40 (1) (401 SE2d 738) (1991). See also *Lawton v. Temple-Warren Ford, Inc.*, 203 Ga. App. 222 (416 SE2d 527) (1992).

the ruling on Arias' summary judgment motion. As we have often noted, "each party has a duty to present his case in full at the summary judgment hearing."[25] While the documents might have been relevant, it was Wynn's responsibility to obtain a ruling on her motion to compel or to seek a continuance of the summary judgment motion. "Appellate courts will review only evidence presented to the trial court before its ruling on a summary judgment motion."[26] Accordingly, we cannot assume that the documents would have supported her piercing the corporate veil theory.

(b) With respect to the tort issue, as discussed in Division 3 above, Wynn has not shown that she has any tort claim relating to the construction of the house. Accordingly, the trial court properly granted summary judgment to Arias on Wynn's claim for negligent supervision.

*Judgment affirmed in Case No. A99A2276. Judgment affirmed in part and reversed in part in Case No. A99A2414. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 10, 2000.

*Joseph A. Roseborough*, for Wynn.

*King, Taylor & Stovall, James F. Stovall III*, for Arias and Arias Properties, Inc.

---

[25] *Hyre v. Denise*, 214 Ga. App. 552, 553 (1) (449 SE2d 120) (1994). See also *Coker v. Culter*, 208 Ga. App. 651, 652 (431 SE2d 443) (1993).

[26] (Punctuation omitted.) *Hyre*, supra.