A01A1170. KRAFT v. DALTON.
(549 SE2d 543)

MIKELL, Judge.

Paula Kraft hired Robert A. Dalton to finish her basement and subsequently sued him for breach of contract for failure to complete the project. The jury returned a verdict in favor of Kraft, awarding $12,222.65 in general damages and $4,777.35 as expenses of litigation, pursuant to OCGA § 13-6-11. Dalton moved for judgment not-

---

withstanding the verdict as to the jury's award of general damages and as to the award of expenses of litigation. The motion for j.n.o.v. regarding the general damages was denied in open court.[1] After taking the second motion under advisement, the trial court granted Dalton's motion for j.n.o.v. on the award of expenses of litigation. Kraft filed this appeal. We reverse.[2] "A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion." (Citations and punctuation omitted.) *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. 455, 456 (2) (496 SE2d 546) (1998). See also *Ruben's Richmond Dept. Store v. Walker*, 227 Ga. App. 867 (490 SE2d 536) (1997). Furthermore, we have held that "[t]he question of attorney fees under [OCGA § 13-6-11] is one for the jury, and will be upheld on appeal if there is any evidence to support it." *LeBrook, Inc. v. Jefferson*, 210 Ga. App. 650, 651 (1) (437 SE2d 360) (1993).

Applying the "any evidence" standard to the jury's verdict in the case sub judice, we conclude that the court erred in granting Dalton's motion for j.n.o.v. as to the award of the expenses of litigation. OCGA § 13-6-11 provides that "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," a jury may award the expenses of litigation as a part of the damages. A review of the record indicates that the jury's award was supported by evidence that Dalton acted in bad faith in his dealings with Kraft. "[T]he elements of bad faith that will support a claim for expenses of litigation must relate to (defendant's) acts in the transaction itself prior to this litigation, not to the motive with which it defended the litigation." (Citations omitted.) *Driggers v. Campbell*, 247 Ga. App. 300, 304 (4) (543 SE2d 787) (2000). "Whether or not [Dalton] acted in bad faith in [his] contractual relations is an issue for the jury to determine." (Citations omitted.) *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 750 (7) (542 SE2d 151) (2000) (bad faith may be found in the defendants' carrying out the provisions of the contract).

The evidence showed that in March 1998, Kraft hired Dalton to

---

[1] After judgment was entered, Dalton filed a notice of appeal; however, the court subsequently dismissed the notice for failure to pay the bill of costs. Thus, it is not a part of this appeal.

[2] As a preliminary matter, we reject Dalton's contention that this appeal is not properly before this Court. Dalton is correct that OCGA § 5-6-35 (a) (10) requires that an appellant file an application for discretionary appeal for an award of attorney fees pursuant to OCGA § 9-15-14; however, the award in this case was made under OCGA § 13-6-11. Furthermore, a j.n.o.v. constitutes a final order that is directly appealable without application. OCGA § 5-6-34 (a) (1).

finish her basement at the rate of $30 per hour. Dalton estimated that the cost of the work would be approximately $7,000 and would not exceed $10,000. Kraft gave him a $3,000 deposit. Dalton represented to Kraft that he had performed similar work on several other basements and that he possessed the skills necessary to complete the renovations. The parties did not have a written contract. According to their oral agreement, Kraft left blank checks for Dalton periodically, and he was supposed to provide her with itemized statements; however, he gave her only one such statement. Kraft quickly became unhappy with Dalton's work on the basement. She testified that the four doors Dalton installed were different heights, that one of the doors would not close properly, that the corners in the basement were "bubbling" and "round," and that the work was "sloppy." Kraft further testified that the walls were "lumpy" and that it did not appear that the drywall mud had been sanded smooth before the walls were painted. According to Kraft, when she initially expressed her concerns to Dalton, he blamed the defective work on his assistant and told Kraft that he would fix the problems.

In June of that year, realizing that the costs had exceeded the agreed-upon budget and that the renovation was not yet complete, Kraft told Dalton that she would not pay him further until he had fixed the defects in the work he had already performed. According to Kraft, Dalton became angry and refused to correct the defects until she paid him more money. Kraft testified that Dalton "dared" her to sue him as follows: "He asked me what I was going to do about it if he didn't [correct the defects], because I couldn't make him. And he said, what are you going to do, sue me? . . . [Y]ou haven't got the nerve." Kraft went to Dalton's home a few days later to ask him again to correct his errors, and he told her she would have to sue him. While at Dalton's home, Kraft observed building materials from her basement that Dalton had removed and placed in his garage.

Kraft contacted six contractors before she located one who would complete the work Dalton had started. Bryan Schatz, a licensed general contractor with a bachelor of science degree in mechanical engineering, whom Kraft ultimately hired, provided detailed expert testimony at the trial regarding the numerous electrical, plumbing, and structural defects in Dalton's work. Schatz testified that the defects were so extensive that all of Dalton's work had to be removed and the job essentially started from scratch.

Based on the foregoing and viewing the evidence in favor of the verdict, there was an evidentiary basis for the jury's conclusion that Dalton acted in bad faith in his dealings with Kraft by falsely representing that he possessed the skill to perform the renovations, failing to complete the project in a workmanlike manner, removing the building supplies from Kraft's home, and ultimately forcing Kraft to

file suit. Even assuming, arguendo, that there was a bona fide controversy to preclude recovery for stubborn litigiousness or causing unnecessary trouble and expense, the jury was authorized to award Kraft the expenses of litigation based on Dalton's bad faith. See *Williamson,* supra at 750-751. See also *Graves v. Diambrose,* 243 Ga. App. 802, 803-804 (2) (534 SE2d 490) (2000). Accordingly, the trial court erred in granting Dalton's motion for j.n.o.v.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 29, 2001.

*Talley & Darden, Charles L. Davis, Jr.,* for appellant.
*Harry W. Krumenauer,* for appellee.