## A03A0325. CLEARWATER CONSTRUCTION COMPANY v. McCLUNG.

### (584 SE2d 61)

Andrews, Presiding Judge.

Clearwater Construction Company (Clearwater) appeals the judgment entered against it, following a bench trial, awarding $41,000 on McClung's breach of warranty claim and $26,000 for attorney fees. Clearwater contends that the trial court improperly awarded McClung attorney fees under OCGA § 13-6-11.

OCGA § 13-6-11 allows recovery of attorney fees if "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." It is only necessary for recovery that the plaintiff show any one of these three conditions exists. Further, an award of attorney fees under OCGA § 13-6-11 is to be affirmed if there is any evidence to support it. *City of Gainesville v. Waters*, 258 Ga. App. 555, 559 (4) (574 SE2d 638) (2002). In addition, "[q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense under OCGA § 13-6-11 are generally questions for the [factfinder] to decide." *Jones v. Ceniza*, 257 Ga. App. 806, 810 (5) (572 SE2d 362) (2002).

Viewed with all inferences in favor of the findings of the trial court, sitting as factfinder, the evidence was that Ginny Powell, whose past employment was as a receptionist/bookkeeper, formed Clearwater Construction Company in April 1994, with two men from Atlanta, intending to buy land in the Gainesville area and build spec houses for sale. Powell had previously built a wood home with a friend in Dawson County and became interested in the process, but otherwise had no construction experience. In the spring of 1995, construction began on the home eventually purchased by McClung. Prior to this, Clearwater had built two houses using synthetic stucco, referred to as an External Foam Insulation System (EFIS).

Gardner, Clearwater's construction supervisor, was responsible for bidding jobs to subcontractors, scheduling them, and overseeing the job. Pirkle, who worked in stucco, did the EFIS on the McClung house, installing a Colormatch product. Prior to 1995, Pirkle had done only one other EFIS home and was not certified as an installer by the manufacturers of the EFIS products until 1997. During the construction of McClung's home, when the stucco finish appeared complete, a neighbor walking his dog noticed work being done on the stucco and was told by Gardner that "we're fixing the stucco." Pirkle testified that, while the house was for sale, he was in the neighborhood and noticed some problems with the EFIS. He made some repairs at that time, which included cutting holes in the stucco surface, pumping glue into the foam board, and nailing the foam board to the sheathing in an attempt to repair it.

McClung was looking for a home in 1996, following her divorce, and Rice was her real estate agent. Because Rice had a home with EFIS which had some problems, she and McClung discussed artificial stucco. McClung had also seen reports on television and in magazines concerning industry-wide problems with EFIS. McClung believed that Dryvit was the best EFIS available, and she wanted that product on her home. When she and Rice, along with Mr. and Mrs. Powell,[1] initially walked through the house, an inquiry was made regarding the type EFIS on the home. Either Mr. or Mrs. Powell said it was Dryvit.

In November 1996, McClung and Clearwater signed a sales contract on the house. A special stipulation to the contract was "seller to furnish purchaser in writing a binding warranty covering any and all defects of structure for a period of one (1) year from date of closing."[2] As provided in the contract, McClung had an inspection done of the house by Bailey of All Pro Home Inspection and problems with the stucco were noted by Bailey in his report. With his report, he provided McClung with the Dryvit installation instructions.

After this inspection, an amendment to the sales contract was prepared by Rice, McClung's agent, and provided, among other items, "seller to correct Drivet system at all windows, doors, openings and deck per the 'Dryvit Corporation Installation Instructions' which are attached." Duncan, Clearwater's listing agent for the house, marked out that provision and wrote in "correction of Drivet System was done according to Inspection Report."

The sale closed, and McClung moved into the house. In October 1997, McClung noticed further problems with the EFIS, including gaps between the stucco and other surfaces. She retained Mary Dillingham of EFIS, Stucco Inspections to inspect the house and prepare a report. Dillingham's evaluation dated November 24, 1997, stated that

> [t]he EIF System application on this home has failed on almost every wall. Wall softness and delamination is [sic] excessive. Most of the EFIS application details and specifications recommended by Dryvit or any major manufacturer were not followed at the time of construction — lack of compliance has resulted in failure of varying degrees.

---

[1] Mr. Powell, a commodities broker, was the corporate secretary of Clearwater, although he was not involved in the construction business.

[2] No written warranty was provided other than this language, but Clearwater does not dispute that a warranty applies.

Dillingham recommended removal and replacement of the EFIS. The report contained a one and one-half page single spaced list of needed repairs. McClung forwarded this report to Clearwater with her letter requesting that the home be brought up to building specifications and EFIS specifications. From November through March 1998, Clearwater's Powell and McClung exchanged letters regarding the problem. It was not until February 1998 that Clearwater had Anderton of Southern Home Inspection go evaluate the house. Anderton, whose college degree was in animal science, had become involved in plastering in 1991. In the fall of 1997, he attended a seminar on moisture analysis of EFI systems. According to him, his inspection was not to determine whether the system had been installed pursuant to manufacturer's requirements, but only to determine whether the EFIS was functioning as a moisture barrier. Although acknowledging that there were a number of problems with the EFIS in this regard, Anderton recommended that only spot repairs be made. By letter of March 30, 1998, McClung again demanded that Clearwater remove the EFIS and replace it, but Clearwater refused, stating that it would only make those repairs suggested by Anderton. Powell acknowledged that Clearwater had never offered to remove and replace the EFIS.

Tarbutton, a civil engineer retained by McClung, testified regarding the extensive moisture damage to her home as a result of the improperly installed EFIS. He also examined both Anderton's and Dillingham's reports and concluded that Anderton's moisture testing had not been done in accordance with standard procedures. For example, one of the moisture probes had been inserted into an area above the garage door, an area not likely to have water damage. Tarbutton agreed with many of Dillingham's conclusions and also recommended removal and replacement of the EFIS. Day, of Northridge Restoration, a firm primarily engaged in insurance restoration and reconstruction work, had done a number of jobs involving removal and replacement of EFIS, and he testified that the cost to remove and replace McClung's EFIS would be $41,051.18.

McClung retained counsel, and suit was filed on October 6, 1998, alleging breach of warranty against Clearwater and fraud and violation of the Georgia Fair Business Practices Act against Mr. and Mrs. Powell. Following a two-day bench trial in September 2001, the trial court found for Mr. and Mrs. Powell on the fraud and Fair Business Practices Act, but against Clearwater on the breach of warranty claim. Regarding attorney fees, the trial court concluded that Clearwater had caused McClung unnecessary trouble and expense, finding

from all facts and circumstances of this case, dating back to [McClung's] initial notice of serious defects with the resi-

dence, and particularly the problems with the synthetic stucco, the failure of . . . Clearwater to timely address said serious defects or to satisfy the warranty provisions in a suitable and timely manner constitutes the basis for which attorney fees can be awarded. Said action on the part of Clearwater basically left [McClung] with no choice but to pursue the legal recourse she has taken.

Clearwater's argument that, because the court found in the Powells' favor on two claims, this provides a bona fide controversy precluding the grant of attorney fees is unavailing. " '[A]ppellate decisions . . . establish that obtaining some but less than all of the relief sought is sufficient to authorize an award of attorney[ ] fees.' *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 528 (3) (543 SE2d 32) (2001)." *L. S. Land Co. v. Burns*, 275 Ga. 454, 457 (3) (569 SE2d 527) (2002).

In light of *L. S. Land*, supra, and *Magnetic Resonance Plus*, supra, *Ralston v. Etowah Bank*, 207 Ga. App. 775, 778 (4) (429 SE2d 102) (1993), and *Wynn v. Arias*, 242 Ga. App. 712, 716 (4) (531 SE2d 126) (2000), citing *Ralston*, supra, relied upon by Clearwater, have been impliedly overruled to the extent that they hold that a bona fide controversy as to any claim precludes the grant of attorney fees.

Appellate courts cannot reverse an award under OCGA § 13-6-11 merely because the evidence would have supported a finding for the defendant. *L. S. Land*, supra. Here, there was evidence that Clearwater did not take the steps necessary to repair the EFIS, relying solely on Anderton's report which did not address all of the problems with the EFIS installation, only its functioning as a moisture barrier. During the period between Anderton's inspection in February 1998, and the trial in 2001, further damage to both the EFIS and the interior of McClung's home occurred. There is some evidence to support the trial court's finding that Clearwater caused unnecessary trouble and expense to McClung by a "sue me" attitude regarding doing anything beyond the patch repairs Anderton recommended. Even counsel for Clearwater acknowledges in his brief that the parties were "at loggerheads" before litigation as to what was necessary to remedy the acknowledged problems with the EFIS.

There was no error in the trial court's award of attorney fees to McClung. See *Kraft v. Dalton*, 249 Ga. App. 754, 756-757 (549 SE2d 543) (2001); *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 856-857 (1) (c) (501 SE2d 30) (1998); *Carpet Transport v. Kenneth Poley Interiors*, 219 Ga. App. 556, 558 (2) (b) (466 SE2d 70) (1995).

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JUNE 19, 2003.

*David T. Markle*, for appellant.
*Stewart, Melvin & Frost, Frank Armstrong III, Wilson, Morton & Downs, Bryan A. Downs, Justin H. Hayes, W. Andrew Maddox*, for appellee.