A09A1537. BROCK BUILT, LLC v. BLAKE.
(686 SE2d 425)

BERNES, Judge.

In this employment dispute, appellee Henry Blake, the former president of appellant Brock Built, LLC, sued Brock Built alleging that Brock Built breached his employment contract by terminating him and failing to pay the severance and incentive compensation due under the terms of the contract. Blake further alleged that Brock Built tortiously breached its duty of good faith and fair dealing in determining its annual net profit for the purposes of calculating Blake's incentive compensation. Brock Built filed a counterclaim alleging that it was Blake who breached both the contract and his fiduciary duties to Brock Built by engaging in certain conduct during his employment. Both parties filed cross-motions for summary judgment. The trial court granted Blake summary judgment on his claims for incentive and severance compensation and on Brock Built's counterclaim for breach of fiduciary duty. In turn, the trial court denied Brock Built's motion for summary judgment on Blake's claims for incentive compensation and tortious breach of the duty of good faith and fair dealing. On appeal, Brock Built challenges the trial court's ruling.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defen-

dant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. Once the moving party discharges this burden, the nonmovant may not rest on its pleadings, but instead must come forward with evidence establishing a triable issue.

(Footnotes and emphasis omitted.) *Hanson Staple Co. v. Eckelberry*, 297 Ga. App. 356, 357 (677 SE2d 321) (2009). On appeal from a grant or denial of summary judgment, we review the evidence de novo, construing all inferences in the light most favorable to the nonmovant in order to determine whether the trial court erred in concluding that the movant was entitled to judgment as a matter of law. Id.

So viewed, the evidence shows that Blake was hired by Brock Built as a construction manager in 2003. Blake subsequently was promoted first to vice president and then, in October 2005, to president of the company.

In connection with Blake's promotion to president, he negotiated with Brock Built a contract of employment (the "Contract"). Pursuant to the terms of the Contract, Brock Built agreed to employ Blake as president through September 2007 at a designated annual base salary, after which time the contract would automatically renew for one-year terms. Brock Built agreed to provide Blake "incentive compensation" by sharing with him a set percentage of Brock Built's "profit margin." The Contract defined "profit margin" as

the net profit of the Company before federal and state income taxes, determined in accordance with accepted accounting practices by the accounting firm employed by the Company and adjusted to exclude the IRS inventory adjustment.

The Contract further allowed termination of the employment relationship with or without cause by either Blake or Brock Built, provided, however, that "[a]ny termination . . . shall be communicated by written notice of termination to the other party." Finally, the Contract guaranteed Blake "severance" payments equal to one year of his annual base salary if he was terminated by Brock Built without "[c]ause," as that term was narrowly defined in the Contract, but did not entitle him to severance payments if he voluntarily resigned or was terminated for cause.

On Friday, February 10, 2006, Brock Built's owner, Steve Brock, summoned Blake into his office and conducted a meeting — which was recorded in short-hand by Brock's secretary and later tran-

scribed[1] — during which the employment relationship between Blake and Brock Built was severed. The parties dispute whether Blake was terminated or voluntarily resigned during the meeting. Nonetheless, Blake and Brock reconvened the following Monday, February 13, and, in a meeting transcribed in a manner consistent with the first, Brock presented Blake with a proposed severance agreement offering him a fraction of the severance payments to which he was otherwise contractually entitled to receive in the event of termination without cause. It is undisputed that Blake never signed and expressly rejected Brock's proposed severance agreement in writing shortly after the second meeting.

In the months that followed, Blake argued that he had been terminated without cause and was entitled to severance payments in accordance with the terms of the Contract. He further contended he was owed additional incentive compensation because the consolidated financial statement upon which Brock Built based its 2005 profit margin for the purposes of calculating his share of profit was inaccurate, based upon his knowledge of the company's financial status. Brock Built, on the other hand, maintained that Blake was not entitled to severance compensation because he voluntarily resigned from his employment and contended that he had been fully compensated based upon its calculated 2005 profits.

Blake ultimately filed the instant lawsuit, alleging breach of contract for failure to pay severance, breach of contract for failure to pay incentive compensation, tortious breach of duty of good faith and fair dealing, and entitlement to bad faith attorney fees. Brock Built counterclaimed, alleging both breach of contract and fiduciary duties and also seeking attorney fees. This appeal followed the trial court's grant of summary judgment to Blake on its contract claims and Brock Built's counterclaims and denial of summary judgment to Brock Built on Blake's claims.

1. *Breach of Contract — Failure to Pay Severance.* Brock Built first argues that the trial court erred in granting Blake's motion for summary judgment on his claim for severance compensation. We disagree.

Brock Built does not assert that Blake was terminated for cause; therefore, the Contract entitled him to severance compensation unless he voluntarily resigned. But even construing the record in the light most favorable to Brock Built, the evidence does not support a finding of voluntary resignation.

First, the Contract required written notice in the event that

---

[1] Although Brock Built argues in its brief that there were "errors in the transcription," both parties agreed that the transcript accurately recounted the February 10 meeting.

Blake intended to resign. It is undisputed that no such notice was ever given.

Second, the transcript memorializing the February 10 meeting between Brock and Blake demonstrates no such resignation. Brock commenced the brief meeting by announcing, "I think we need to go ahead and end the relationship. I hate that its come to this but I think its in the best interest of the company and my personal interest." Brock mentioned that he was in the process of drafting a "termination agreement" and wanted the relationship to end amicably. When Brock vaguely referenced that he had "cause" to terminate Blake, Blake inquired as to "what kind of things [he] did." Brock responded simply, "I am not going to go into it. The issues, problems, consequences or repercussions. It's over." Blake then asked if that was going to be his last day and whether he needed to arrange for a ride home, to which Brock instructed him to compile a status report of his current projects and return on Monday. At no time during the meeting did Blake indicate that their employment relationship was being severed due to any voluntary conduct on his part.

Finally, at the meeting the following Monday, February 13, Brock presented Blake with his proposed termination agreement (which offered Blake less compensation than that to which he was entitled in the event of termination without cause) and instructed him to review it and "come back with comments." By letter dated February 24, Blake objected to Brock Built's termination of him without written notice, denied Brock Built had cause to terminate him, and demanded severance payments in accordance with the terms of the Contract.

These facts simply do not support a conclusion that Blake voluntarily resigned. Brock Built relies heavily on the fact that during the February 10 meeting, Brock offered to allow Blake to "keep [his] pride" and say that he resigned, and that during the February 13 meeting, when Brock asked if Blake had any discussions with other employees, Blake responded that he told one employee that he "was leaving" and would "probably start [his] own company." At best, however, this evidence supports a finding that Blake was given the option to resign, which he clearly declined to do. And, contrary to Brock Built's assertion, Blake's statement that he "was leaving" is not synonymous with a statement that he voluntarily resigned, nor does it create a question of fact on that issue in light of the other direct evidence to the contrary. See *Bonney Motor Express v. Yates,* 171 Ga. App. 754, 754-755 (1) (320 SE2d 844) (1984) (circumstantial evidence is insufficient to overcome direct and positive evidence of the fact in question unless it points to a conclusion opposite that of the direct evidence).

2. *Breach of Contract — Failure to Pay Incentive Compensation.* Brock Built contends that the trial court erred in granting Blake summary judgment on his claim for breach of contract based upon Brock Built's failure to pay Blake the full amount of incentive compensation to which he was entitled. Brock Built contends that, when calculating Blake's incentive compensation, it relied upon a 2005 consolidated financial report prepared by an outside certified public accountant which reported Brock Built's net income as less than $1 million. Blake, on the other hand, asserts that not only is the 2005 net income figure reflected in Brock Built's financial report inconsistent with his understanding of the company's financial status at the time that he was terminated, but is also inconsistent with the $3 million plus net income reported on Brock Built's sworn 2005 tax returns. In granting summary judgment to Blake, the trial court concluded that, even if there did exist a conflict in the evidence with respect to Brock Built's 2005 net income, the conflict was created by and should be construed most strongly against Brock Built, which was bound by the sworn net income statement contained within its tax returns.

We cannot say with certainty that Blake was entitled to summary judgment as a matter of law on this breach of contract claim. Both the consolidated financial report and Brock Built's 2005 tax returns were prepared by the same outside certified public accountant. The accountant submitted a sworn declaration in which she claimed to be unaware "of any material modifications that should be made to Brock Built's financial statements in order for them to be in conformity with U. S. generally accepted accounting principles" and further stated that the differing net income figures contained within the two documents are not inconsistent and can indeed be rectified by taking into account the differences between financial and tax accounting.

Like both Blake and the trial court, we are troubled that Brock Built has failed to explain why the discrepancy between its net income figures is not reflected on the IRS Schedule M-1 (titled "Reconciliation of Income (Loss) per Books With Income (Loss) per Return"), which reports "net income per books" and serves to identify "the different treatment of income and expense items for book and tax purposes." See *FPL Group v. Commr. of Internal Revenue*, 115 T. C. 554, 558, n. 4 (2000). See also *United States v. Norwest Corp.*, 116 F3d 1227, 1229 (I) (A) (8th Cir. 1997) ("The[ ] adjustments between a corporation's book income and the taxable income it reports on the return are reflected by the IRS's Schedule M."); *Long Term Capital Holdings v. United States*, 330 FSupp.2d 122, 211 (II) (D) (4) (c) (D. Conn. 2004) ("the M-1 schedule is designed to notify the IRS of differences in book income/loss and tax

income/loss"). But, even assuming that Brock Built's consolidated financial report and the 2005 tax return constitute inconsistent statements, we are not authorized on summary judgment to construe them against Brock Built in light of the sworn declaration from the nonparty accountant who prepared both documents. See *Thompson v. Ezor*, 272 Ga. 849, 852 (2) (536 SE2d 749) (2000) ("The holding that 'the testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him,' when passing upon a motion for summary judgment, does not apply to contradictory statements by witnesses who are not parties to the litigation.") (punctuation and footnote omitted); *Patterson v. Bates*, 295 Ga. App. 141, 143-144 (671 SE2d 195) (2008). Compare *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986) (a party's self-contradictory testimony is subject to an unfavorable construction on summary judgment). We therefore conclude that the record evidence presents a question of fact on this issue proper for jury resolution.

3. *Breach of Fiduciary Duty.* Brock Built next argues that the trial court erred in granting Blake summary judgment on its counterclaim for breach of fiduciary duty. According to Brock Built, the trial court disregarded critical evidence and applied the incorrect legal standard in concluding that Brock Built's allegations were insufficient as a matter of law. Brock Built relies on two general categories of conduct in support of its argument that Blake breached his fiduciary duty: (a) With the improper motive of increasing his incentive compensation, Blake attempted to maximize Brock Built's 2005 profit by both accelerating the construction of houses that were not scheduled to close until 2006 and by delaying the payment of invoices and bonuses until 2006; and (b) Blake neglected to properly oversee the affairs of Brock Built by failing to adequately manage the purchase order system, failing to budget engineering features in the sale prices of certain specific homes, and failing to use proper building materials for noise abatement in other specific homes.

Georgia law requires that corporate officers and directors discharge their duties in good faith and with the care of an ordinarily prudent person in a like position. OCGA §§ 14-2-830 (a); 14-2-842 (a). In determining whether a corporate officer has fulfilled his or her statutory duty, Georgia courts apply the business judgment rule. See *Regenstein v. J. Regenstein Co.*, 213 Ga. 157, 162 (97 SE2d 693) (1957); *Flexible Products Co. v. Ervast*, 284 Ga. App. 178, 181 (2) (b) (ii) (643 SE2d 560) (2007). See also *Matter of Munford, Inc.*, 98 F3d 604, 611 (B) (11th Cir. 1996); *Medserv Corp. v. Nemnom*, 1997 U. S. Dist. LEXIS 18246, *9-10 (II) (N.D. Ga. 1997). The business judgment rule affords an officer the presumption that he or she acted in good faith, and absolves the officer of personal liability unless it is

established that he or she engaged in fraud, bad faith or an abuse of discretion:

> The business judgment rule protects ... officers from liability when they make good faith business decisions in an informed and deliberate manner. The presumption is that they have acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Unless this presumption is rebutted, they cannot be held personally liable for managerial decisions. However, officers may be held liable where they engage in fraud, bad faith, or an abuse of discretion.

(Citations and punctuation omitted.) *TSG Water Resources v. D'Alba & Donovan Certified Public Accountants*, 260 Fed. Appx. 191, 197 (IV) (A) (11th Cir. 2007). See *Intl. Ins. Co. v. Johns*, 874 F2d 1447, 1461 (III) (B) (2) (11th Cir. 1989); *Cottle v. Storer Communication*, 849 F2d 570, 574 (II) (11th Cir. 1988); *In the Matter of Tom's Foods, Inc.*, 2005 Bankr. LEXIS 2062, *6 (M.D. Ga. 2005). Allegations amounting to mere negligence, carelessness, or "lackadaisical performance" are insufficient as a matter of law. *Medserv Corp. v. Nemnom*, 1997 U. S. Dist. LEXIS at *9 (II). See also *Matter of Munford, Inc.*, 98 F3d at 610-611 (B); *Flexible Products Co.*, 284 Ga. App. at 181 (2) (b) (ii).

We agree with the trial court that Brock Built has not alleged conduct that rises to the level of fraud, bad faith or an abuse of discretion sufficient to establish a claim for breach of fiduciary duty. Even if we were to assume that Blake's allegedly selfish motives could render Brock Built's financial success in 2005 a breach of his duty to the company, Brock Built failed to submit any specific evidence in support of its claims. For example, contrary to its allegations that Blake inappropriately accelerated home closings, the uncontradicted evidence shows that Brock Built had contractually agreed to close the homes at issue in 2005, not in 2006. And when Blake presented a sworn affidavit asserting that he had never improperly withheld payment of an invoice, Brock Built failed to point to any such properly submitted yet intentionally delayed expense and/or any other competent evidence of invoices not being paid at Blake's direction. When faced with Blake's sworn statements denying these allegations, Brock Built was required to put forth some competent evidence illustrating a triable question of fact on these issues. *Cottle*, 849 F2d at 575 (II). See *Turner Broadcasting System v. CBS*, 627 FSupp. 901, 909-910 (N.D. Ga. 1985) (that corporate officers or directors may stand to gain personally from their actions does not obviate the application of the business judg-

ment rule).

Likewise, Brock Built's allegations regarding the deficiencies in Blake's management and budgeting amounted at best to a showing of negligent or careless performance of Blake's duties, which is insufficient to show breach of fiduciary duty as a matter of law. See *Medserv Corp.*, 1997 U. S. Dist. LEXIS 18246 at *5-6, 10 (granting summary judgment to corporate officer despite evidence of "a laundry list of alleged failings and shortcomings in the [officer's] performance of his duties"); *Flexible Products Co.*, 284 Ga. App. at 181 (2) (b) (ii) (643 SE2d 560) (2007) ("Georgia's business judgment rule relieves officers and directors from liability . . . for ordinary negligence in discharging their duties."); *Stanziale v. Nachtomi*, 330 B. R. 56, 63-65 (IV) (C) (D. Del. 2004) (affirming dismissal of claim for breach of fiduciary duty despite allegations that corporate officers and directors "abdicated their responsibility over the management and business affairs of the [corporation]").

In sum, the allegations in the complaint in conjunction with the record evidence are simply not sufficient to rebut the presumption that Blake made good faith business decisions in an informed and deliberate manner or to present a jury question as to whether he engaged in fraud, bad faith, or an abuse of discretion. See *Matter of Munford, Inc.*, 98 F3d at 610-611 (B); *Cottle*, 849 F2d at 574-579 (II) (A)-(D); *Medserv Corp.*, 1997 U. S. Dist. LEXIS 18246 at *9-11 (II); *Stanziale*, 330 B. R. at 60-66 (IV) (A)-(F). Cf. *Turner Broadcasting System*, 627 FSupp. at 909-911. Compare *TSG Water Resources*, 260 Fed. Appx. at 197-199 (IV) (A) (reversing the grant of summary judgment when a question of fact was presented as to whether the corporate officer, who had much to gain from misrepresenting the financial health of the company, knew of accounting errors in financial statements and failed to advise the directors of the errors); *Southeast Consultants v. McCrary Engineering Corp.*, 246 Ga. 503, 507-510 (2) (273 SE2d 112) (1980) (officer has a fiduciary obligation not to usurp corporate business opportunity); *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 579 (2) (b) (586 SE2d 74) (2003) (officer breached fiduciary duty when he converted tens of thousands of dollars of cash belonging to corporation to his own use). "[T]he business judgment rule is a policy of judicial restraint born of the recognition that [officers] are, in most cases, more qualified to make business decisions than are judges." (Citation and punctuation omitted.) *In re The Bal Harbour Club*, 316 F3d 1192, 1194-1195 (II) (11th Cir. 2003). See also *Millsap v. American Family Corp.*, 208 Ga. App. 230, 233 (3) (430 SE2d 385) (1993). The trial court did not err by granting Blake summary judgment on this claim.

4. *Breach of Good Faith and Fair Dealing.* Finally, Brock Built argues that the trial court erred in denying its motion for summary

judgment on Blake's claim for breach of good faith and fair dealing. Blake asserts that Brock Built's contractual agreement to pay him a percentage of net profits in 2005 gave rise to a fiduciary duty to calculate its profits in good faith, and that the alleged violation of that duty amounted to a tort from which he suffered damages. We disagree with Blake.

Although a duty of good faith and fair dealing arises in every contract, the mere breach of a contractual duty is insufficient to create a cause of action for tortious conduct. *Wynn v. Arias*, 242 Ga. App. 712, 716 (3) (531 SE2d 126) (2000); *Constr. Lender v. Sutter*, 228 Ga. App. 405, 409 (2) (491 SE2d 853) (1997); *Rhine v. Sanders*, 100 Ga. App. 68, 72-74 (110 SE2d 128) (1959). To sue in tort for actions otherwise arising out of the breach of a contractual obligation, "the defendant must also breach an *independent* duty created by statute or common law." (Citation omitted; emphasis in original.) *Constr. Lender*, 228 Ga. App. at 409 (2). In addition, the plaintiff must have "an independent injury over and above the mere disappointment of plaintiff's hope to receive the contracted-for benefit." (Citation and punctuation omitted.) *Constr. Lender*, 228 Ga. App. at 409 (2). And generally, no fiduciary duty runs from an employer to an at-will employee. See *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975); *Servicemaster Co. v. Martin*, 252 Ga. App. 751, 758 (5) (556 SE2d 517) (2001); *Physician Specialists in Anesthesia v. Wildmon*, 238 Ga. App. 730, 732 (1) (a) (521 SE2d 358) (1999).

It is undisputed that Blake was an at-will employee of Brock Built. Indeed, the Contract specifically provided that

> Blake acknowledges and agrees that his employment with [Brock Built] is expressly "at will." Either party may terminate the employment relationship for any reason with or without cause.

Consequently, Brock Built did not owe any independent duties to Blake apart from those arising under the Contract. See *Servicemaster Co.*, 252 Ga. App. at 758 (5); *Constr. Lender*, 228 Ga. App. at 409-410 (2); *Rhine*, 100 Ga. App. at 72-74.

It follows that the duty allegedly breached by Brock Built and the damages arising therefrom arose solely from Brock Built's alleged breach of contract and are encompassed within that claim. See *Servicemaster Co.*, 252 Ga. App. at 758 (5); *Constr. Lender*, 228 Ga. App. at 409-410 (2); *Rhine*, 100 Ga. App. at 72-74. Although we agree with Blake that, under certain circumstances, factual allegations of misconduct such as those involved in this matter can give rise to a cause of action in tort, this is not one of those cases. Compare *Tidikis v. Network for Med. Research*, 274 Ga. App. 807,

810 (1) (619 SE2d 481) (2005) (at-will employment contract providing that "a fiduciary and confidential relationship has commenced and will continue to exist between [the employer and employee]" presented a jury question as to whether employee stated an independent claim for breach of fiduciary duty); *Spears v. Mack & Bernstein, P.C.*, 227 Ga. App. 743, 745 (2) (490 SE2d 463) (1997) (despite the employee being at-will, a separate duty arose from the contractual term agreeing to treat her as "some sort of partner"). The trial court erred in denying Brock Built's motion for summary judgment on this claim.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 6, 2009.

*Ashe, Rafuse & Hill, Joshua D. Jewkes*, for appellant.
*Munger & Stone, Thomas J. Munger, Benjamin A. Stone*, for appellee.