**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**July 10, 2012**

# In the Court of Appeals of Georgia

| | |
|---|---|
| A12A0518. BROCK BUILT, LLC v. BLAKE. | DO-023 |
| A12A0519. BLAKE v. BROCK BUILT, LLC. | DO-024 |

DOYLE, Presiding Judge.

In these consolidated appeals, we consider for a second time an employment dispute between plaintiff Henry Blake and defendant Brock Built, LLC. After the trial court ruled on the parties' cross-motions for summary judgment, the case proceeded to a bench trial, and the trial court entered judgment in favor of Blake. The parties filed the instant cross-appeals, and we affirm the judgment, but vacate the attorney fees and costs award and remand for proper calculation, for the reasons that follow.

In *Brock Built, LLC v. Blake*,[1] we reviewed the trial court's order on the parties' cross-motions for summary judgment, explaining that this litigation began when

---

[1] 300 Ga. App. 816 (686 SE2d 425) (2009).

Blake, the former president of . . . Brock Built, LLC, sued Brock Built alleging that Brock Built breached his employment contract by terminating him and failing to pay the severance and incentive compensation due under the terms of the contract. Blake further alleged that Brock Built tortiously breached its duty of good faith and fair dealing in determining its annual net profit for the purposes of calculating Blake's incentive compensation. Brock Built filed a counterclaim alleging that it was Blake who breached both the contract and his fiduciary duties to Brock Built by engaging in certain conduct during his employment. Both parties filed cross-motions for summary judgment. The trial court granted Blake summary judgment on his claims for incentive and severance compensation and on Brock Built's counterclaim for breach of fiduciary duty. In turn, the trial court denied Brock Built's motion for summary judgment on Blake's claims for incentive compensation and tortious breach of the duty of good faith and fair dealing.[2]

This Court affirmed the grant of summary judgment to Blake on his claim for severance compensation[3]; reversed the grant of summary judgment to Blake on his claim for breach of contract based on Brock Built's failure to pay him the full amount of incentive compensation to which he was entitled, concluding that "the record

---

[2] Id. at 816.

[3] See id. at 818-819 (1).

evidence presents a question of fact on this issue"[4]; affirmed the grant of summary

judgment to Blake on Brock Built's counterclaim for breach of fiduciary duty[5]; and

reversed the denial of summary judgment to Brock Built on Blake's claim for breach

of good faith and fair dealing.[6]

The case was then remanded to the trial court for determination of the amount

of severance and incentive compensation due to Blake and whether to award him

attorney fees. Following a bench trial, the trial court entered judgment in favor of

Blake as follows: severance pay in the amount of $180,000 (representing 12 months

salary); incentive compensation/percentage of net profits in the amount of

$19,809.20; attorney fees and costs in the amount of $240,104[7]; and interest in the

amount of $66,780.[8]

---

[4] See id. at 820-821 (2).

[5] See id. at 821-823 (3).

[6] See id. at 823-825 (4).

[7] The trial court awarded Blake $207,279 in attorney fees and $32,825 in expenses.

[8] The trial court also reduced Blake's incentive compensation by $10,000 based on an advance on profit sharing paid to him by Brock Built; the reduction is not at issue on appeal. The total amount of the judgment to Blake was "$256,589 (inclusive of interest) plus $240,104 in attorney fees, costs, and expenses."

3

Brock Built appeals in Case No. A12A0518, challenging the severance and attorney fees portions of the judgment, and Blake appeals in Case No. A12A0519, arguing that the incentive-compensation award was insufficient and that the trial court erred by overruling his objection to the testimony of Brock Built's accountant after Brock Built asserted the accountant-client privilege during discovery.

When reviewing the parties' enumerations, we are mindful that

> [o]n appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In bench trials, the judge sits as trier of fact[,] and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.[9]

*Case No. A12A0518*

1. *Breach of contract – Severance.* Brock Built argues that the trial court erred by awarding Blake twelve months severance instead of six months. We disagree.

The employment contract between Brock Built and Blake entitled Blake to severance compensation if Brock Built terminated the employment relationship,

---

[9] (Punctuation omitted.) *Bourke v. Webb*, 277 Ga. App. 749 (627 SE2d 454) (2006).

4

unless it was terminated for cause. The contract specified that Brock Built was required to pay Blake twelve months salary upon termination, unless Blake "becomes employed with a third party within six months of his termination from the Company," in which case Brock Built was required to pay Blake six months salary. Although Brock Built initially argued that Blake voluntarily resigned, we concluded on appeal that the "facts simply do not support a conclusion that Blake voluntarily resigned."[10] Thus, the issue at trial was whether Blake "was employed with a third party within six months" of his termination from Brock Built.[11]

Blake was terminated from Brock Built in February 2006.[12] It is undisputed that in February 2006, Blake incorporated Terranova Properties, Inc., a "residential construction and remodeling" company, listing himself as the incorporator, president, and sole member of the Board of Directors. Blake testified that Terranova Properties was "a one-man operation," and he was solely responsible for preparing estimates, proposals, bids, contracts, and invoices, reviewing bills, and maintaining the

---

[10] *Brock Built*, 300 Ga. App. at 819 (1).

[11] Whether Blake forfeited half of his severance was not at issue during the previous appeal.

[12] See id. at 817-818.

5

profitability of the corporation. Blake concedes that he began doing business for Terranova Properties in February 2006, the same month his employment relationship with Brock Built was terminated.

The trial court found that

> [t]he plain language of the agreement says that Blake must become "*employed with* a third party" within six months. The [c]ourt does not find that Blake's income from his own LLC is synonymous with "employment with" a "third party[."] For this reason, Blake is entitled to the equivalent of twelve months[] salary, or $180,000, as severance.[13]

Brock Built argues that the trial court erred by determining that Blake did not forfeit half of his severance by becoming employed by Terranova Properties, Inc., which Brock Built argues is a third-party. This argument misconstrues the trial court's ruling. The trial court did not find that Terranova Properties was not in fact a third-party, but instead concluded that Blake's role in his own corporation did not constitute "employment with a third party" as required by the contract in order to find

---

[13] (Emphasis in original.)

6

that Blake forfeited half of his severance. We agree with the trial court and affirm the award of 12 months severance to Blake.[14]

2. Brock Built also challenges the attorney fee and cost award to Blake. We affirm the imposition of attorney fees and costs against Brock Built, but we reverse and remand the case to the trial court for determination of the proper amount of the award.

The agreement between the parties provided that: "[t]he Company shall pay or reimburse Blake for all costs and expenses (including court costs and reasonable attorney[] fees) incurred by Blake in connection with any litigation seeking to enforce Blake's rights under this Agreement, provided that Blake is substantially successful in such litigation."

(a) Brock Built argues that Blake was not entitled to attorney fees and costs under the parties' agreement because he was not "substantially successful" in this litigation, pointing out that Brock Built obtained summary judgment on Blake's claim for breach of good faith and fair dealing. We are unpersuaded by this argument.

---

[14] See, e.g., *Yargus v. Smith*, 254 Ga. App. 338, 341-342 (562 SE2d 371) (2002) (affirming the trial court's contract interpretation).

Blake alleged that he was entitled to severance and incentive compensation under his agreement with Brock Built, and he framed his claims as breach of contract and breach of good faith and fair dealing. Although the trial court granted summary judgment to Brock Built on the latter claim, Blake successfully obtained a judgment for both severance and incentive compensation. The fact that the amount awarded was less than what he sought does not mean that he was not "substantially successful" in this litigation. Accordingly, we find no error in the trial court's decision to award Blake attorney fees and costs.[15]

(b) Brock Built also contends that the trial court erred by awarding Blake $240,104 in attorney fees and costs because he failed to demonstrate the reasonableness of the amount sought.

> In Georgia, an attorney cannot recover for professional services without proof of the value of those services. A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees. When a party seeks fees based on a contingent fee agreement, the party must show that the contingency fee percentage was a usual or customary fee

---

[15] See, e.g., *Benchmark Builders, Inc. v. Schultz*, ___ Ga. App. ___ (Case No. A09A2373, decided Mar. 22, 2012).

8

for such case and that the contingency fee was a valid indicator of the value of the professional services rendered. In addition, the party seeking fees must also introduce evidence of hours, rates, or some other indication of the value of the professional services actually rendered.[16]

At trial, Blake's attorney testified that he charged Blake a 40 percent contingency fee, and he submitted his bills. He further testified that the customary fee in this area in cases such as this one is usually 40 percent. "[C]onstruing the evidence in favor of [Blake], there was evidence that the contingency fee [he] agreed to pay was a valid indicator of the value of [his] attorney's services."[17]

As Blake concedes on appeal, however, the trial court's award calculation was erroneous. Blake's counsel requested 40 percent of the total damages awarded, explaining that because the trial court granted Brock Built summary judgment on Blake's tort claim for breach of the duty of good faith and fair dealing, he could recover only those costs incurred in pursuing his breach of contract claims. The trial court, however, awarded Blake 40 percent of the total amount of damages Blake

---

[16] (Punctuation omitted.) *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 889 (3) (663 SE2d 379) (2008), quoting *Home Depot U.S.A. v. Tvrdeich*, 268 Ga. App. 579, 584 (2) (602 SE2d 297) (2004).

[17] *Tvrdeich*, 268 Ga. App. at 585 (2). See also *Hofrichter/Stiakakis*, 291 Ga. App. at 890 (3).

*sought* at trial, including the amount he sought on his incentive compensation claim.[18] Therefore, we affirm the imposition of attorney fees and costs, but we vacate the attorney fees and costs award and remand the case for proper calculation thereof consistent with this opinion.

*Case No. A12A0519*

3. Blake argues that the trial court erred by improperly calculating the amount of incentive compensation he was contractually entitled to receive. We disagree.

Pursuant to the employment agreement, Brock Built agreed to pay Blake a designated annual base salary, plus "incentive compensation," which was comprised of a set percentage of the company's "profit margin." The agreement defined "profit margin" as

> the net profit of the Company before federal and state income taxes, determined in accordance with accepted accounting practices by the accounting firm employed by the Company and adjusted to exclude the IRS inventory adjustment. The determination of profit margin made by the accounting firm employed by the Company shall be final and binding.

---

[18] Specifically, the trial court awarded Blake 40 percent of the $518,198 he sought in total damages, plus his costs, rather than 40 percent of the $256,589 awarded to Blake.

10

At trial, Brock Built's independent accountant, Elizabeth Salvati, testified that the company's net income for the relevant year – 2005 – was $944,220, as set forth in the company's 2005 financial statement. Salvati stated that the statement was prepared by HLB Gross Collins, the independent accounting firm with which Salvati was employed, in accordance with generally accepted accounting principles ("GAAP").

Brock Built's expert, Francis Dean Driskell, III, a forensic accountant, testified that in his opinion, Brock Built's 2005 financial statement was not prepared in accordance with GAAP. Driskell further testified that Brock Built's 2005 tax returns (specifically, the IRS Schedule M-1"), which reported the company's net income as $3.1 million, was "a reasonable proxy" for determining the company's net profits according to GAAP. Driskell conceded, however, that he did not reach an independent determination of the company's net income for 2005 based on Brock Built's financial information.

At the conclusion of the evidence, the trial court concluded that Brock Built's net profits for 2005 were $944,220. The trial court concluded in the final order that Brock Built's accountant testified that

the net profit statement [the accounting firm] produced for Brock Built in 2005, reflecting profits of $944,220, is accurate. Plaintiff has failed to carry his burden of proving by a preponderance of the evidence that the net profits for 2005 were other than those represented by the accountants. Thus, the financial statement produced by HLB Gross Collins – *the accounting firm employed by the Company* – properly reflects the "profit margin" upon which Blake's bonus would be based, as contemplated by the parties in their contract. The evidence produced by [Blake], i.e.[,] the 2005 —1 reflecting $3 million "net profit per books," was explained by the accountant, Ms. Salvati, as representing a difference between financial accounting and tax accounting, and as being caused by the reporting of past years' income to the IRS in 2005. [Blake] failed to produce persuasive evidence to the contrary.

Thus, given the clear language of the contract that the parties would use the accountant's calculation to determine profit margin for the purpose of calculating Blake's share of profit ("bonus"), the parties are bound by that plain language. In fact, in the contract, which both sides testified was negotiated and revised by both, the parties agreed that the accountant's calculation would be "final and binding." Blake's bonus, therefore, is calculated using the figure $944,220. Blake is entitled to a bonus (as share of the 2005 net profits) of $19,809.20.[19]

Blake argues that the trial court "erred by disregarding the sworn statement by Brock Built (made to both the federal taxing authority and to banks) that its 'net

---

[19] (Emphasis in original.)

income per books' for 2005 was over $3.1 million." This argument is belied by the trial court's order, which clearly addresses the discrepancy between the company's financial statement and its tax return. Regardless, when

> reviewing the fact findings of a trial court in a non-jury trial, this Court will not disturb them if there is any evidence to sustain them and this Court does not make credibility determinations. Although [Blake] may disagree with the credibility determinations made by the trial court, it cannot be said on the record before us that there is no evidence to support the trial court's conclusions.[20]

4. Finally, Blake argues that the trial court erred by overruling his objection to the admission of evidence from Salvati because Brock Built asserted the accountant-client privilege during discovery. We find no basis for reversal.

The parties filed a consolidated pre-trial order on March 29, 2010, and Brock Built listed Salvati as a "may call" witness in the order. The bench trial in this case commenced on December 1, 2010. The trial was continued to May 31, 2011, when Salvati testified. After Salvati responded to questions regarding Brock Built's financial statement for 2005, defense counsel began to question her about the

---

[20] (Citation omitted.) *Williamson v. Strickland & Smith, Inc.*, 296 Ga. App. 1, 5 (3) (673 SE2d 858) (2009). See also *Bourke*, 277 Ga. App. at 751 (1).

company's 2005 tax return. Blake's attorney objected, explaining that during Salvati's April 2007 deposition, Brock Built's counsel instructed her not to offer any testimony regarding the tax return. The trial court implicitly overruled the objection, explaining to Blake's attorney that "there's a way that you can bring that to the [c]ourt's attention. And if you wanted me to force them to make her discuss those tax issues before she testified at trial, I would have been happy to take that issue up. But we haven't done that, so I'm going to let her testify about it, especially since her signature is on the tax document."

"The admission of evidence is generally committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion."[21] Here, given Blake's failure to file a motion in limine to exclude Salvati's testimony or a motion to compel her testimony regarding the tax returns once Brock Built listed her as a may-call witness in the consolidated pretrial order, we find no abuse of discretion in the trial court's decision to permit Salvati's testimony on this issue.[22]

---

[21] (Punctuation omitted.) *McReynolds v. Krebs*, 307 Ga. App. 330, 334 (2) (705 SE2d 214) (2010).

[22] See *Magill v. Edd Kirby Chevrolet, Inc.*, 277 Ga. App. 619, 620 (1) (627 SE2d 207) (2006).

14

*Judgment affirmed in part, and vacated and remanded in part. Andrews and Boggs, JJ., concur.*