**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 6, 2019**

# In the Court of Appeals of Georgia

A19A1891, A19A1969. KHALIA, INC. v. ROSEBUD; and vice versa.

PHIPPS, Senior Appellate Judge.

These companion appeals arise from a shooting at a convenience store that left plaintiff Daniel Rosebud injured. After defendant Khalia, Inc. rejected Rosebud's pretrial demand for $150,000, a jury found Khalia responsible for $1.134 million in damages. On appeal in Case No. A19A1891, Khalia argues that the trial court erred when it denied its motions for judgment notwithstanding the verdict (j.n.o.v.) on the issue of duty and for j.n.o.v. or new trial on the issue of causation. On cross-appeal in Case No. A19A1969, Rosebud argues that the trial court erred when it awarded him attorney fees under OCGA § 9-11-68 in an amount significantly below that specified in his contingency fee agreement. We find no error and affirm in both cases.

"The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." (Citation and punctuation omitted.) *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987).

Thus viewed in favor of the verdict, the record shows that on November 1, 2015, Rosebud and his friend Dontavious Miles were looking for a barber to cut Miles's hair for a new job when they stopped at a gas station and convenience store at 490 Fairburn Road in Atlanta. The property, which was leased to Khalia, included a chicken wing shop under different corporate ownership and a common parking area. Miles parked the car he was driving at the end of the gas pump island and went inside the convenience store while Rosebud napped in the front passenger seat. A man in a white hat began a conversation with Miles, after which shots were exchanged between the two men, some of which hit Rosebud. Miles drove away but was forced to stop by an oncoming train at a nearby railroad crossing. After Miles abandoned the car, Rosebud lay down to evade detection and then ran down the tracks, where he called 911.

Evidence before the jury showed that 490 Fairburn Road was a well-known scene of illegal drug transactions, loitering requiring police intervention, and at least

2

two incidents of prior gunplay, including a shooting inside the store three days before the incident at issue. The store manager knew of the gunplay, and a beat officer testified that the location's level of criminal activity required him to stop there four or five times a day. A detective also testified that although businesses are authorized to obtain a "criminal trespass warning" empowering the police to arrest trespassers, Khalia had never requested such a warning.

Khalia's principal testified that the man in the white hat had been loitering outside and around the gas station for more than 20 minutes before the shooting. Although the store manager testified at trial that Khalia regularly held safety meetings and reported criminal activity, he was impeached with his own deposition testimony that store employees were instructed "never" to "make any sort of reports or document anything on paper[.]" The evidence also showed that there were 14 cameras located inside the store, but only two, which were not monitored, outside.

After the close of evidence, Khalia moved for a directed verdict on two issues: that Rosebud was a licensee rather than an invitee; and that the property owner, rather than Khalia, had a non-delegable duty to take reasonable care. The trial court granted the first motion and denied the second, establishing that Rosebud was a licensee but rejecting Khalia's argument that the owner could be solely responsible as a matter of

3

law for safety on the property. The jury then returned a verdict of $1,718,367.46 in total damages, finding Khalia 66% at fault, with Miles and the man in the white hat 17% each at fault. The trial court entered judgment on the verdict against Khalia in the amount of approximately $1.134 million.

Khalia moved for j.n.o.v. or a new trial on grounds including that it owed no duty to Rosebud because he was never on Khalia's premises and that any breach of care by Khalia could not have been the proximate cause of the shooting. The trial court denied the motions, holding that both arguments were waived because they were not raised in the motion for directed verdict and that some evidence supported the conclusions that Rosebud was on Khalia's property or its approaches and that Khalia failed to take reasonable care under the circumstances.

Case No. A19A1891

On appeal, Khalia argues that the trial court erred when it denied its motion for j.n.o.v. because there was no evidence that Khalia breached its duty to Rosebud. Khalia also argues that its motion for j.n.o.v. or new trial should have been granted because the shooter's criminal conduct broke the chain of proximate causation. We disagree.

1. (a) *Waiver of JNOV Motion*. OCGA § 9-11-50 (b)

allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. [Rather,] [i]t provides . . . a post-verdict opportunity for a determination of the legal questions raised by the motion for a directed verdict. If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment in accordance with the motion for directed verdict. It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion.

(Citation omitted.) *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 234 (1) (612 SE2d 17) (2005). It follows that "arguments asserted in a motion for j.n.o.v. but not raised in the motion for directed verdict cannot be considered on appeal." (Citation omitted.) Id. at 235 (1).

The record shows that although Khalia moved for a directed verdict on grounds including, in passing, that there was no evidence to support a finding that it breached the standard of care due to Rosebud as a licensee, the trial court did not grant the motion on this basis. Instead, the trial court granted the motion on the ground that Rosebud was a licensee. The record also shows that Khalia did not ask for

5

clarification of or object to the trial court's ruling, which effectively granted its motion in part and denied it in part; instead, Khalia remained silent during the extended discussion of the applicable standard of care, including the framing of a jury charge on the issue and objections from Rosebud, and did not object to the charge when or after it was delivered. The issues of Rosebud's status as licensee and the applicable standard of care having been resolved in Khalia's favor below, there is nothing for us to review on appeal. See *Moody v. Dykes*, 269 Ga. 217, 219-220 (3) (496 SE2d 907) (1998) (induced error based on the acquiescence of counsel in the giving of a charge provides no ground for reversal under OCGA § 5-5-24 (c)).

(b) *Merits of JNOV Motion: Duty and Breach*. Even assuming that the issue is not waived, some evidence supported the jury's determination that Khalia violated that standard of care. Because Rosebud was held to be a licensee, as to which holding no error has been asserted, Khalia can be liable only for its "willful and wanton" act or omission. OCGA § 51-3-2 (b). As we have often explained,

> "it is *usually* wil[l]ful or wanton not to exercise ordinary care *to prevent* injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a . . . *hidden peril* on one's premises. Thus, as to a licensee, *ordinary care and diligence* must be used to *prevent* injuring him after his presence is known or reasonably should be anticipated."

6

(Punctuation omitted.) *Cooper v. Corporate Property Investors*, 220 Ga. App. 889, 891 (470 SE2d 689) (1996), quoting *Wade v. Mitchell*, 206 Ga. App. 265, 267 (2) (c) (424 SE2d 810) (1992) (emphasis in *Wade*). In such cases, a possessor of land is liable for harm caused to a licensee

> if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved[.]

*Cooper*, 220 Ga. App. at 891, quoting *London Iron, etc. Co. v. Abney*, 245 Ga. 759, 761 (2) (267 SE2d 214) (1980). As always, the test for liability "is the proprietor's superior knowledge of the hazard." (Citation omitted.) *Cooper*, 220 Ga. App. at 891.

As a preliminary matter, we note that no error has been asserted as to the trial court's admission of evidence concerning at least two prior shootings on the 490 Fairburn property, one of which occurred only three days before the incident at issue. See *Camelot Club Condo. Assoc. v. Afari-Opoku*, 340 Ga. App. 618, 621, 623 (1) (a) (798 SE2d 241) (2017) (given that "[t]he question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary

7

adjudication by the courts" and that a crime "does not have to originate on [a] landowner's property in order to hold the owner liable" under a foreseeability analysis, a trial court did not err in denying a defendant's motion for directed verdict concerning harm arising from a third-party crime) (citation omitted).

Here, as in *Wade*, supra, Rosebud was injured not by a pre-existing defect but as a result of arguable "acts and omissions occurring as he arrived [and remained] on the premises," 206 Ga. App. at 266 (2) (b) – that is, a failure either to maintain security measures required under the dangerous conditions known to Khalia employees or to warn customers and their guests of those dangerous conditions. Further, and "[e]ven assuming [that Rosebud's] presence had not in fact been known, a truck service stop or gas station can be charged with reasonably anticipating that, throughout the period of its business operation, persons will frequently stop unannounced on the premises[.]" Id. at 267 (2) (c). The relevant question is thus "whether the prior criminal activity was sufficiently and substantially similar to demonstrate [the occupier's] knowledge" that conditions or persons on his property would subject visitors to "unreasonable risk of criminal attack" so that the occupier "had reasonable grounds to apprehend that the present criminal act was foreseeable."

(Footnote and punctuation omitted.) *McDaniel v. Lawless*, 257 Ga. App. 187, 189 (570 SE2d 631) (2002).

This trial court correctly determined that a jury should decide whether Khalia was "wanton or wilful" in failing to take "ordinary care" to warn invitees, such as Miles, and their guests, such as Rosebud, of the hazardous conditions on its premises, including frequent criminal activity and gunfire, of which it arguably had knowledge. See *Wade*, 206 Ga. App. at 268 (3) (reversing a grant of summary judgment when a gas station owner had arguably failed to warn a licensee of the danger posed by an exploding tire); see also *Millan v. Residence Inn by Marriott,* 226 Ga. App. 826, 828 (487 SE2d 431) (1997) (reversing a grant of summary judgment when a hotel arguably breached a duty when it failed to warn guests of previously reported incidents of sexual assault in the hotel pool by a "dangerous guest on its premises"). Further, because there was evidence to support the jury's verdict, there was no error in denying Khalia's motion for new trial. See generally *Aldworth Co., Inc. v. England*, 281 Ga. 197, 201 (2) (637 SE2d 198) (2006) (even if a defendant has waived his right to contest the denial of a motion for j.n.o.v. because he failed to move for a directed verdict, he may nonetheless move for a new trial "to review the sufficiency of the evidence under the 'any evidence' standard of review") (footnote

omitted); on remand, 286 Ga. App. 1, 3-4 (2) (a) (648 SE2d 198) (2007) (evidence of driver's status as employee and causation was sufficient to deny defendant's motion for new trial).

2. *Causation*. As we have noted above, Khalia's motion for directed verdict did not raise the question of whether the evidence was sufficient to sustain the jury's verdict as to causation. It follows that, for the same reasons stated in Division 1 (a) above, the trial court did not err when it denied Khalia's motion for j.n.o.v. on this ground. Nor was the denial of the alternative motion for new trial in error because the question of whether the shooter's criminal act broke the causal chain arising from Khalia's arguable failure to take sufficient precautions was for the jury to decide. *Camelot*, 340 Ga. App. at 623 (1) (a) (ii) (affirming denial of motion for directed verdict concerning foreseeability of third-party shooting resulting in condominium owner's death); *Millan*, 226 Ga. App. at 828 (reversing grant of summary judgment as to whether a third-party attack in hotel swimming pool was foreseeable and whether defendants were negligent in failing to exercise ordinary care); *McNeal v. Days Inn of America, Inc.*, 230 Ga. App. 786, 789 (498 SE2d 294) (1998) (reversing grant of summary judgment to premises owner on claims by plaintiffs who were

10

attacked in hotel's parking lot by four men who followed them there from a nearby restaurant).

Case No. A19A1969

3. On the cross-appeal, Rosebud asserts that the trial court erred when it awarded his counsel less than one-third of the amount due under Rosebud's 45% contingency fee agreement. We disagree.

Under OCGA § 9-11-68 (b) (2), plaintiffs making a rejected offer of settlement followed by a judgment of more than 125 percent of the offer "*shall* be entitled to recover *reasonable attorney's fees and expenses of litigation* incurred by the plaintiff or on the plaintiff's behalf from the date of the rejection of the offer of settlement through the entry of judgment." (Emphasis supplied.) We will affirm a trial court's award of attorney fees under OCGA § 9-11-68 (b) in the absence of an abuse of discretion. See *Strategic Law, LLC v. Pain Management & Wellness Ctrs. of Ga.*, 350 Ga. App. 526, 529 (2) (828 SE2d 1) (2019); *Brock Built, LLC v. Blake*, 316 Ga. App. 710, 714 (2) (a) (730 SE2d 180) (2012) (even when the amount awarded under OCGA § 9-11-68 was less than what a party sought, the party was "substantially successful" such that a trial court did not err in deciding to award it fees and costs).

11

Construed in favor of the trial court's judgment, the record shows that Rosebud presented the trial court with three options for calculating the proper fee, including value added over Khalia's highest offer (which was $50,000) and over Rosebud's highest offer (which was $150,000). Rosebud estimated the proper fee as between approximately $408,000 and $488,000. At a hearing, Khalia's expert witness testified that 200 hours was a reasonable amount of time as between Khalia's rejection of Rosebud's offer of judgment and the end of trial and that $250 per hour was a reasonable fee rate under these circumstances. The trial court selected a value-added approach, comparing the fee Rosebud would have owed if Khalia had accepted his $150,000 offer to the fee actually earned on the judgment under the contingency fee agreement, and concluding that a fee of $442,855.13 "comes closest to effectuating the purpose of" OCGA § 9-11-68. The trial court went on to review that amount for reasonableness, however, and concluded that despite the skill shown by counsel in obtaining the verdict, "some of the fees evidenced by Rosebud's attorneys were unnecessary." The court then awarded counsel $140,951.17 as "reasonable" fees and expenses.

The Supreme Court of Georgia has noted that although a contingency fee agreement is "certainly a guidepost to the reasonable value of the services the lawyer

performed," such an agreement "is not conclusive, and it cannot bind the court in determining that reasonable value, nor should it bind the opposing party required to pay the attorney fees, who had no role in negotiating the agreement." (Citation omitted.) *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 484 (3) (a) (759 SE2d 804) (2014). There was some evidence before this trial court that 200 hours was a reasonable amount of time for counsel to spend from Khalia's rejection of Rosebud's offer of judgment through trial and that $250 per hour was a reasonable rate for this lawyer. On this record, which includes an award of nearly three times the amount due according to this evidence, we cannot say that the trial court erred when it awarded Rosebud more than $140,000 in reasonable fees and costs. See *Brock Built*, 316 Ga. App. at 714 (a).

*Judgment affirmed in both cases. McMillian, P. J., concurs. McFadden, C. J., concurs fully and specially in Case No. A19A1891 and dissents in Case No. A19A1969.* **\***


**\* THIS OPINION IS PHYSICAL PRESEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A19A1891, A19A1969. KHALIA, INC. v. ROSEBUD; and vice

versa.

MCFADDEN, Chief Judge, concurring fully and specially in part and dissenting

in part.

I concur fully in Case No. A19A1891 and emphasize that whether Rosebud

was an invitee or a licensee is not before us. See *Howard v. Gram Corp.*, 268 Ga.

App. 466, 469, 602 S.E.2d 241, 244 (2004) (holding, 9-3, that Howard was a mere

invitee in part because the Gram Corporation was not operating a "retail

establishment").

But in Case No. A19A1969 the majority tacitly approves the lodestar method

for fee calculations under OCGA § 9-11-68 (b) (2), the subsection of the offer-of-

judgment statute regarding attorney fees awards to plaintiffs. The lodestar method has

been adopted by the federal courts for their fee-shifting jurisprudence. But it has not

been adopted in Georgia, and it is incompatible with the language of the subsection

before us. So I respectfully dissent.

The lodestar method was devised by the Third Circuit in a case where that

court assumed that the applicable statute, in that context, "d[id] not authorize award

of attorneys' fees." So the Third Circuit set out standards for fees awarded "under the

general equitable powers of the court." *Lindy Bros. Builders, Inc. of Phila. v. Am.*

*Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 164, 165 (3d Cir. 1973). The analysis with which it set out those standards contains few citations of authority. Id at 166-169. Nevertheless, for the federal courts, "The "lodestar" figure has, as its name suggests, has become the guiding light of [their] fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992).

Under "the 'lodestar' method of computing fees, a trial court must multiply the number of hours trial counsel reasonably spent by a reasonable hourly rate. This figure can then be adjusted upward or downward for certain factors known as multipliers, such as contingency and the quality of the work performed, to arrive at a final fee." *Friedrich v. Fid. Nat. Bank*, 247 Ga. App. 704, 705–06, 545 S.E.2d 107, 109 (2001) (citations and punctuation omitted).

Here Khalia advocated the lodestar method at the fee hearing below, eliciting expert testimony that the fee awarded should be for 200 hours at $250 per hour. And the trial court implicitly adopted the lodestar method, explaining her decision to award less than one third of the amount due under the fee agreement in part by finding "that some of the fees evidenced by Rosebud's attorneys were unnecessary" and that there is "some question regarding the memorialization of the time spent[.]"

2

Those criticisms are salient only if one accepts the premise of the lodestar method: that the fee should be calculated by selecting a reasonable hourly rate and multiplying it by the time reasonably and actually spent.

That is the federal rule. In *City of Burlington*, supra, Justice Scalia, writing for a 6-3 majority, reaffirmed that under that federal fee-shifting jurisprudence, the lodestar method applies to contingency fee agreements and held that, under that jurisprudence, the federal courts are directed to factor the contingency into calculation of plaintiff's counsel's reasonable hourly rate and prohibited from "[t]aking account of it again through lodestar enhancement[.]" *City of Burlington v. Dague*, 505 U.S. 557, 559, 563, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992).

But the only Georgia case I have found that addresses the lodestar method declines to adopt it. *Friedrich v. Fid. Nat. Bank*, supra, 247 Ga. App. 704, 706–07 ("find[ing] persuasive [] criticisms of the lodestar method" and adopting, for common-fund class action cases, a percentage-of-the-fund-analysis).

And the statute before us is a Georgia statute. The federal statute involved in *City of Burlington*, "[i]n language typical of most federal fee-shifting provisions . . . authorize courts to award the prevailing party a 'reasonable' attorney's fee." 505 U.S. at 567 (Blackmun, J., dissenting, citing 33 U.S.C. § 1365(d) (Clean Water Act);

3

42 U.S.C. § 6972(e) (Solid Waste Disposal Act)). The statute before us, the subsection of the offer-of-judgment statute related to attorney fee awards to plaintiffs, O.C.G.A. § 9-11-68 (b) (2), provides,

> If a plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the plaintiff shall be entitled to recover *reasonable* attorney's fees and expenses of litigation *incurred* by the plaintiff or on the plaintiff's behalf from the date of the rejection of the offer of settlement through the entry of judgment.

(emphasis added).

So the question before us becomes what to make of "incurred." To answer that question, I turn to the canons of construction.

The surplusage canon directs, "If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have not consequence." Antonin Scalia and Brian Garner, Reading Law, § 26, p. 174 (2012) (translating the Latin in a footnote: "Words are to be taken as having an effect"). The surplusage canon has been adopted in Georgia. See

4

*Campaign for Accountability v. Consumer Credit Research Found.*, 303 Ga. 828, 834, 815 S.E.2d 841, 846 (2018).

"In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning." *Six Flags Over Georgia v. Kull*, 276 Ga. 210, 211, 576 S.E.2d 880, 881 (2003) (citations and punctuation omitted). The ordinary meaning of "incur," as reflected in the relevant definition in Merriam Webster's Colligate Dictionary (10th Ed.) (1994), is "to become liable[.]" So the statutory phrase directs courts' attention to the amount the plaintiff and his attorney actually agreed upon and that plaintiff actually owes his attorney — as opposed to a counterfactual finding about an hourly rate that a hypothetical plaintiff and attorney might have agreed upon.

Of course the analytical journey does not end with the agreed-upon amount. "[T]he contingency fee agreement is not conclusive[.]" It is only a guidepost along the way. *Georgia Dep't of Corr. v. Couch*, 295 Ga. 469, 484, 759 S.E.2d 804, 816 (2014). The statute also requires that the amount awarded be "reasonable." And our Supreme Court has held that it is error to "calculat[e] what amount of attorney fees was reasonable based solely . . . on that agreement rather than on evidence of hours, rates, or other indications regarding the value of the attorneys' professional services

5

actually rendered." *Georgia Dep't of Corr. v. Couch*, 295 Ga. 469, 484, 759 S.E.2d

804, 816 (2014). *Couch* quoted with approval our holding that,

> In Georgia, an attorney cannot recover for professional
> services without proof of the value of those services. A
> court may consider a contingent fee agreement and the
> amount it would have generated as evidence of usual and
> customary fees in determining both the reasonableness and
> the amount of an award of attorney fees. When a party
> seeks fees based on a contingent fee agreement, the party
> must show that the contingency fee percentage was a usual
> or customary fee for such case and that the contingency fee
> was a valid indicator of the value of the professional
> services rendered. In addition, the party seeking fees must
> also introduce evidence of *715 hours, rates, or some other
> indication of the value **185 of the professional services
> actually rendered.16

*Brock Built, LLC v. Blake*, 316 Ga. App. 710, 714–15, 730 S.E.2d 180, 184–85

(2012) (citations omitted).

So a trial court's analysis of the amount of attorney fees to be awarded to a

plaintiff under § 9-11-68 (b) (2) should address the reasonableness of the agreed-upon

fee. That analysis should consider its reasonableness at the time the plaintiff and his

attorney entered into their agreement — possibly rejecting an excessive percentage.

6

And it should consider it's reasonableness upon completion of the matter — possibly deeming a fee excessive where the case settles with unanticipated ease and alacrity.

I would vacate and remand for such an inquiry.[1]

---

[1]This case demonstrates that reversal rates are a poor measure of the quality of a judge. In *Cohen v. The Alfred & Adele Davis Academy*, 310 Ga. App. 761, 764 (714 SE2d 350) (2011), we held that "by its terms, OCGA § 9-11-68 does not require that the trial court make written findings of fact or conclusions of law unless the court concludes that an offer was not made in good faith." Nonetheless, making such written findings and conclusions is inarguably the better practice. (We have imposed such a requirement in cases involving attorney fees and costs under OCGA § 9-15-14 even though that statute is silent as to whether specific findings are required. See *McKemie v. City of Griffin*, 272 Ga. 843, 844-845 (4) (537 SE2d 66) (2000).) Absent explicit findings by the trial court appellate review is meaningless.

7